IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LUANN BRESLIN, individually and
as personal representative of the
estate of Cody L. Reindahl,

                Plaintiff,

      v.

WISCONSIN HEALTH CARE
LIABILITY INSURANCE PLAN
and TREMPEALEAU COUNTY
HEALTHCARE CENTER,

                Defendants.

OPINION AND ORDER

12-cv-860-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff LuAnn Breslin, suing individually and as representative of the estate of Cody L. Reindahl brought this civil action against defendants Trempealeau County Healthcare Center and Wisconsin Health Care Liability Insurance Plan under 42 U.S.C. § 1983 and the state law of negligence. She contends that the defendant Healthcare Center is responsible for the suicide of her son, Cody Reindahl, while he was in the Healthcare Center's custody as a result of his civil commitment.

Both defendants moved for summary judgment without discussing how the Healthcare Center, a governmental entity, could be held responsible for Cody Reindahl's death under § 1983. Plaintiff never referred to this issue in her response to defendants' motion. In addition, neither side explained whether defendant Healthcare Center is or is not

1

a suable party.  Consequently, I stayed a ruling on the motion for summary judgment and directed plaintiff to submit a supplemental brief explaining why she believes that this defendant is a suable entity and on what ground it could be held liable for her son's death.

Plaintiff filed a timely response without providing adequate answers to the court's order.  Accordingly, defendants' motion for summary judgment must be granted.

From the parties' proposed findings of fact and the record, I find that the following facts are undisputed.

UNDISPUTED FACTS

On August 12, 2011, Cody Reindahl, plaintiff's son, attempted to commit suicide by poisoning himself.  While hospitalized, he made another attempt at suicide on August 21, 2011, this time by trying to jump out a third story window.  Later that month, the Circuit Court for Polk County committed him for mental health treatment.  On August 29, 2011, he was admitted to the Trempealeau County Healthcare Center, a nursing home that includes a unit licensed under Wis. Stat. § 50.03(1m) as an "institution for mental diseases."

When Reindahl arrived at the Healthcare Center, he was housed in the "South Unit," a locked unit that restricts patients' access to items they may use to hurt themselves, such as sharp objects and rope-like objects that may be used as ligatures or as instruments for hanging.  While in the South unit, he was checked every 15 minutes.  On September 6 or 7, 2011, he was transferred to a less restrictive unit, the "NEW Unit," on the recommendation of his treating psychiatrist, Dr. Roberts, who was a defendant in this case

2

but settled with plaintiff and was dismissed from the suit.  The NEW Unit is also locked, maintains 15-minute checks and does not allow patients to have knives or sharp objects, but it does allow access to other items that are not allowed in the South Unit, including shoelaces, belts and strings.

On September 10, 2011, Reindahl hanged himself with shoelaces.  He died on September 11, 2011.


OPINION

A "local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658, 694 (1978).  Instead, it is only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  <u>Id</u>.  As the Court of Appeals for the Seventh Circuit has explained, "[a] local governing body may be liable for monetary damages under § 1983 if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority."  <u>Thomas v. Cook County Sheriff's Department</u>, 604 F.3d 293, 303 (7th Cir. 2010).

"An official policy or custom may be established by means of an express policy, a widespread practice which, although unwritten, is so entrenched and well-known as to carry

the force of policy, or through the actions of an individual who possesses the authority to make final policy decisions on behalf of the municipality or corporation." Rice ex rel. Rice v. Correctional Medical Services, 675 F.3d 650, 675 (7th Cir. 2012). Thus, a policy may be implemented only by those officials with authority to do so. Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986) ("Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered."). And something is a policy only when it "establish[es] fixed plans of action to be followed under similar circumstances consistently and over time." Id. at 480-81. In other words, a "policy" is not a one-time action or decision, even if completed by someone with policymaking authority. Id. at 481-82 ("The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.").

The next issue is therefore what kinds of policies might have violated Reindahl's constitutional rights. As an involuntarily committed individual, Reindahl had rights under the Fourteenth Amendment to a minimal level of safety and protection (including from himself) during his confinement at the Healthcare Center. Youngberg v. Romeo, 457 U.S. 307, 324 (1982) ("Respondent thus enjoys constitutionally protected interests in conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests.").

In practice, the Court of Appeals for the Seventh Circuit has applied to civilly committed individuals the same standard it applies to pretrial detainees and prisoners, which

4

is whether the defendant was deliberately indifferent to the confined person's serious medical need.  Belbachir v. County of McHenry, 726 F.3d 975, 979 (7th Cir. 2013) (civilly committed person entitled to same protection as pretrial detainees, who are entitled "to at least as much protection as convicted criminals are entitled to under the Eighth Amendment . . . namely protection from harm caused by a defendant's deliberate indifference to the detainee's safety or health."); Forrest v. Prine, 620 F.3d 739, 744 (7th Cir. 2010) ("The Fourteenth Amendment right to due process provides at least as much, and probably more, protection against punishment as does the Eighth Amendment's ban on cruel and unusual punishment. [Because plaintiff did not explain what standard to apply,] . . . .We therefore shall borrow Eighth Amendment standards to analyze [plaintiff's] Fourteenth Amendment section 1983 claim."); Mombourquette ex rel. Mombourquette v. Amundson, 469 F. Supp. 2d 624, 636 (W.D. Wis. 2007) (standards are same).

To meet this standard, plaintiff must show that (1) Reindahl's medical need was objectively serious and (2) the county was aware of the risk created by its *policy* or custom, that it disregarded Reindahl's need and, in doing so, created an unreasonable risk of harm. Farmer v. Brennan, 511 U.S. 825, 847 (1994); Thomas, 604 F.3d at 303 ("[The county] must have been aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff.").  Reindahl's medical need is not in question; the parties dispute only the second requirement.

In her search for a policy for which the Healthcare Center could be said to have been responsible, plaintiff cites the center's policy of allowing shoelaces and rope-like objects in

5

the NEW Unit.  (Plaintiff also frames this argument as a failure to have any policy on rope-like objects in the NEW Unit, but these are simply two ways of saying the same thing, so I will address them together.)

The initial problem with this argument is that plaintiff does not explain why the Healthcare Center's policy would give rise to liability in this case.  Plaintiff has not shown that the Healthcare Center is a suable entity in its own right or whether it can sued only through the county.  (Plaintiff says that the Trempealeau County Healthcare Center is a suable entity because, under Fed. R. Civ. P. 17(b)(3), the court looks to the law of the forum state on capacity to sue and be sued, and Wisconsin law "takes a broad view of those subsidiary governmental entities that may sue and be sued in their own names apart from the city, county or school district with which they are associated," Plt.'s Br., dkt. #90, at 8, but this argument is insufficient to show capacity to be sued.  The cases plaintiff cites for this proposition do not discuss suable capacity (and simply proceed with an entity similar to defendant) and are therefore not instructive, and plaintiff does not otherwise show that Wisconsin law gives legal capacity to entities like the Healthcare Center, which is a facility owned and run by the county.)

Thus, it is not clear which party is the proper one and whether the Healthcare Center's policies or the county's policies are the relevant policies in this case.  If Trempealeau County is the proper defendant, plaintiff does not explain why the decision makers at the Healthcare Center had authority to make policy for the county.  Pembaur, 475 U.S. at 481-82 (policymakers are those with final authority to establish policy); Vodak v. City of

6

Chicago, 639 F.3d 738, 748 (7th Cir. 2011) ("[O]ne can be an official policymaker in one domain but not in another.").  It is plaintiff's burden to show that the policy on which she relies gives rise to liability.  Cf. Palmer v. Marion County, 327 F.3d 588, 595 (7th Cir. 2003) (plaintiff bears burden of showing that county follows unconstitutional practice or custom).  Because plaintiff has not shown either that the Healthcare Center is the proper defendant or that the Healthcare Center's policies may stand in for the county's, she has not met this burden.

Nevertheless, even if the Healthcare Center is the proper defendant or if its decision makers had authority to make policy for the county, plaintiff has not identified a policy that infringed the rights of plaintiff's son.  Plaintiff says that allowing him to have access to rope-like objects was deliberate indifference to his serious medical need, but it was not the decision to allow him access to those objects that caused his death.  Rather, it was the decision to move him from the South Unit, in which those objects were prohibited, to the NEW Unit, in which they were allowed.

Plaintiff does not argue that the facility does not provide a "safe" unit for suicidal patients.  She describes the South Unit as "a safe environment in the sense that lethal devices such as shoelaces . . . were not available to [her son]."  Plt.'s Br., dkt. #41, at 9.  Thus, plaintiff's argument is essentially that the mere existence of a unit that allowed rope-like objects was unconstitutional for any patient, no matter his level of progress.  This is not a persuasive argument.

Two cases from the Court of Appeals for the Seventh Circuit are instructive.  In both

Miller v. Harbaugh, 698 F.3d 956, 963 (7th Cir. 2012), and Frake v. City of Chicago, 210 F.3d 779, 781 (7th Cir. 2000), confined individuals hanged themselves using equipment (a bunk bed in Miller and horizontal bars in Frake) that was present facility-wide even though the facilities were aware of the risks that the individuals and the equipment posed for suicide. Nevertheless, the court of appeals held in Frake that the existence of these facility-wide policies did not represent deliberate indifference because the facilities took other precautions to prevent suicides, such as frequent checks and the prohibition of other items. In Miller, the court resolved the plaintiff's claim under the doctrine of qualified immunity, so it did not reach the question of the constitutional violation but it suggested that the bunk beds were not deliberate indifference.

In this case, the Healthcare Center's policy on rope-like objects was not facility-wide, leaving even less reason to find deliberate indifference than in Miller and Frake. After all, the healthcare facility in this case provides a unit (the South Unit) without the rope-like items, so patients may be protected from the rope policy altogether. Moreover, like the facilities in Miller and Frake, the Healthcare Center took other precautions in the NEW Unit to mitigate the effects of the less restrictive rope policy, such as prohibiting other objects (knives and sharp objects), locking the unit and checking on patients every 15 minutes. Miller and Frake suggest that the Healthcare Center's policy in the NEW Unit is constitutionally sound because it applied only to some patients and because the unit used other suicide-prevention policies.

By contrast, plaintiff relies on Belbachir, 726 F.3d at 783, as an example of a case in

which the court of appeals reversed a district court on the issue of a county's deliberate indifference to suicide in a jail.  Plaintiff's reliance is misplaced.  In Belbachir, the court of appeals expressed concerned about the county's "failure either to have provided annual training or to have had a written policy," but it affirmed the district court's decision in favor of the county defendants, id. at 783, reversing the district court only as to its dismissal of a defendant who was sued as an individual, id. at 782.

Plaintiff's real objection in this case is not that defendant allowed some patients to have shoelaces, but that staff members determined that her son could be transferred to a unit in which he would be allowed shoelaces.  Thus, the constitutional issue is actually the staff's treatment decision for Reindahl rather than the Healthcare Center's policy on shoelaces generally.  Cf. Belbachir, 726 F.3d at 783 ("The critical failure to prevent Belbachir's suicide occurred when defendant Frederick (a member of medical staff), having decided that Belbachir was not suicidal, failed to tell the guards to put her on suicide watch."). Defendants cannot be held liable for the staff's decision.  It was not a "policy," even if plaintiff could show that the decision was made by a policymaker because it was not a plan for future treatment or placement decisions.  It was a one-time decision about a particular patient.  Pembaur, 475 U.S. at 481-82 (to be policy, decision must be intended as plan for how to act in future similar situations, even if decision is made by person with policymaking authority).  Moreover, the decision was made by employees whose liability cannot be imputed to the municipal defendants simply because the Healthcare Center employs them. Belbachir, 726 F.3d at 983 ("[T]he County itself would not be liable merely by virtue of the

9

doctrine of respondeat superior.").

In sum, I conclude that plaintiff has failed to prove her case against defendant Trempealeau County Healthcare Center and its defendant insurer.  Summary judgment will be granted for defendants.

As a general rule, district courts decline to exercise supplemental jurisdiction over state law claims when all federal claims have been disposed of by summary judgment.  <u>Carr v. CIGNA Securities, Inc.</u>, 95 F.3d 544, 546 (7th Cir. 1996).  I will do the same and dismiss plaintiff's state law claim for negligence without prejudice to her filing it in state court.

ORDER

IT IS ORDERED that

1.  The motion for summary judgment filed by defendants Trempealeau County Healthcare Center and Wisconsin Health Care Liability Insurance Plan, dkt. #32, is GRANTED as to plaintiff LuAnn Breslin's § 1983 claim.

2.  Plaintiff's negligence claim is DISMISSED WITHOUT PREJUDICE to her refiling it in state court.

3.  Plaintiff's motions to disregard and strike Dr. Roberts's testimony, dkt. ##58, 65; defendants' motion to strike expert Kirk Dahl, dkt. #73; plaintiff's motions in limine, dkt. ##94-97; and defendants' motion in limine, dkt. #86, are DENIED as moot.

The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 4th day of March, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge